CASE NO 219-01376-2021

| | |
|---|---|
| Judy D. Brown<br>770 Fairway Dr. #1313<br>Coppell, Texas 75019 | **DISTRICT COURT**<br>**of** |
| **Plaintiff** | **COLLIN COUNTY** |
| v. | **CIVIL DIVISION** |
| **ALIXA-RX**<br>Lorraine Dyer<br>Kelly Simpson<br>6400 Pinecrest Dr. #200<br>Plano, Texas, 75024 | FILED<br>2021 MAR 19 PM 2:38<br>LYNNE FINLEY<br>DISTRICT CLERK<br>COLLIN COUNTY, TX<br>BY_____ DEPUTY |
| **Defendants** | |

## CIVIL COMPLAINT

Plaintiff brings this action against the Defendants for claims of Harassment, Hindrance in the performance of her job, claims under the Equal Pay Act of 1963, Violations of Defendant's Company Policy and Procedures sections HR-410, 1.0, 1.5, 1.11, 1.13, 1.22 and 1.28. Exposure to a Hostile work environment due to Defendant's actions, threat of termination, defamation of character and Fraudulent Inducement of Employment.

## BACKGROUND

In September of 2020 Plaintiff responded to a job posting for a Collections Specialist position in Plano Texas.

The recruiter shortly thereafter contacted the Plaintiff and felt she was a good fit for the position. An in person interview was held between the Plaintiff and Kelly Simpson, one of the Defendants.

After the interview Plaintiff received a call from the recruiter stating they were offering the Plaintiff a position, but not at the $19 which was discussed but an offer of $18 an hour. The recruiter stated that the Defendant was not able to pay the $19 due to Budget issues which Plaintiff felt if they had Budget issues they never should have told the recruiter they would pay $19 an hour.

On the 5th of October Plaintiff started her job as a Collections Specialist with the Defendant, she learned their computer system and within the first two weeks was collecting money and negotiating settlements which she received praise from Defendant Kelly Simpson and other employees around her that heard her on the phone with her negotiations and collection tactics.

Mrs. Simpson also stated as well on how Plaintiff handled her accounts and stated in the presence of Ms. Manuela Wilson, "you're the collector" compared to Manuela.

In November of 2020 the Defendant made a business decision to "fix" a computer glitch that kept invoices from being processed for almost two years and most of these patients were on Medicaid with very little income which as a collector the Plaintiff feels this was more or less a deceptive business practice in which they required the Plaintiff to participate in and the only one making the majority of these calls. Because the statements were not sent out 30 days after service but some 365 days later made Patients and their family extremely angry and vented their anger to the Plaintiff which caused her emotional and physical distress.

On Christmas Eve, 2020 Plaintiff was required to call these past due patients and it was at that time she learned her phone display was coming up as a Spam call, subjecting her to rude and degrading remarks, something which was not in her job description.

Around the 12th of January, Plaintiff sent a text to Kelly Simpson informing her because of the stress these calls were having on her she was going to take the day off and try to relax.

On the 14th of January, Plaintiff had a meeting with Defendants, Lorraine Dyer and Kelly Simpson. Plaintiff put two concerns to them.
1. Plaintiff brought the issue of her salary to the Defendants, she told them that Libby, the recruiter had informed her the rate of pay was $19 an hour but when the offer came in they told her because of the budget they could only offer $18, in which Lorraine came back stating in an unfriendly context, "You accepted it".

-2-

Plaintiff became aware of the difference of pay between her and Manuela Wilson shortly before this meeting. Ms. Wilson responded to the same posting with the same rate of pay, but when they offered her the $19 she replied she would not take the position unless she was paid $20 an hour. Plaintiff and Ms. Wilson have the same responsibilities, call the same type of accounts but in comparison Plaintiff had more accounts that fell under the "computer glitch" and was subjected to more abusive and negative remarks made by patients or family members. Plaintiff later learned that is was against State Law and probably Federal Law in calling Medicaid patients seeking money which the Defendant should have known and never informed the Plaintiff therefore putting the Plaintiff in a situation of violating Laws.

Also at this meeting Plaintiff made them aware of the Spam display coming up on her phone when making out bound calls, Plaintiff felt because of this display patients were not answering their phone or when they did they accused the Plaintiff of be a "scammer" out to screw them of money. Defendant Dyer stated she would have IT look into this.

Plaintiff later learned that Mrs. Dyer never followed up on either of these issues Plaintiff had brought to her attention and therefore violating sections 1.28, 1.13 and 1.22 under the Company's rules and procedures policy and exposing her to a hostile work environment.

At this meeting as well Mrs. Dyer told the Plaintiff that she wanted her to keep her voice down....Plaintiff was shocked....being a good collector is having a strong voice presence and Plaintiff has been a successful collector for more than 22 years and no previous employers had ever told her to "lower" her voice as well as several of Plaintiff's previous employers had called her a "Sweetie Collector" because of her approach in retrieving money.

Plaintiff feels this was not only an attack on her personality but also a hindrance in performing her job properly.

It should be noted as well that there are several other employees in the company that have a loud speaking voice and the way the office is set up they can be considered as well as being loud and Mrs. Dyer never made any such comments to them.

It should be stated here as well that the last quarter of 2020 Plaintiff collected more than $82,000 which she believes was more because she found several accounts Defendant had failed to calculate in and was told no other collector that had worked there brought that much in.

Plaintiff was on the phone more than 80% of the day dealing with irate patients or their family members in trying to collect money. There were issues of billing, medications not covered by insurance and other causes for concern of billing errors which the Plaintiff had to resolve in a professional manner.

The week of February 15th, one of the worst storms in Texas history came upon many employers when their employees were forced to work from home, Plaintiff was one of those employees. Her work environment usually consisted of two monitors and easy access to several applications in performing her job.

-4-

Plaintiff was provided only one monitor in trying to access 6 or more applications with the system constantly going into "sleep mode" every minute or so, which when at her work station did happen but not as quickly as what the Plaintiff was experiencing at home.

Many other employees did not have electricity and some without water which was the case of Defendant Simpson.

Plaintiff did have electricity and water and even though her work productivity was slow due to having pop ups freezing her ability to access the system she was struggling on.

At around 4:00 on the afternoon of the 15th, roughly half an hour before Plaintiff was scheduled to punch out she received the following email from Mrs. Simpson:

**"Can you both send me a "detailed" report with all of the accounts you worked today? I know inbound calls have been an issue so I want to make sure we have made up for it on outbound calls. Thank You."**

Plaintiff replied back:

**"If you look under my spreadsheets you can see the accounts I touched because it will have the dates....."**

Reply from Defendant:

**"Yes, I am unable to get on the "S" drive. Please send to my email."**

**"All employees who work from home have to create a list of their work day. It does not have anything to do with me questioning your work. Please create the list and send it to me, if you need the next 30 minutes to do so that is fine"**

- 5 -

**NOTE: This was the first time Plaintiff was informed of this policy** as well as the fact Plaintiff was not an employee that worked from her home, she worked in the office in Plano, Texas on an 8-4:30 regular schedule.

Plaintiff:

**"I wish you had told me that this morning instead of at the last minute."**

Defendant:

**"Unfortunately I have not had the means to do much today since I have no power still. Thanks for being so cooperative."**

Plaintiff took this as a sarcastic remark from the Defendant and in doing so should be a violation under Section 1.28 of the Company's Policies and Procedures guidelines.

The next day February 16th at 9:30 in the morning Mrs. Simpson sent the following email to the Plaintiff:

**"Please remember to keep track of the accounts you worked today. Please send me the details of the accounts you worked before the end of the day"**

Plaintiff replied:

**"What do you mean when you say details......"**

Defendant's response:

**"I need to know what exactly your workday looked like. The accounts you researched, called and spoke with anyone."**

Plaintiff's reply to Mrs. Simpson:

**"It's not my fault you can't access the "S" drive and because of that I shouldn't have to do "double" work"**

**Exhibit A**

page 6 of 6

−6−

Plaintiff continued to have issues with her computer, the pop-ups were worse which kept the Plaintiff from accessing the applications on the server to perform her duties as a collector and Plaintiff would send Mrs. Simpson emails informing her of these issues, Kelly replied back stating Manuela didn't have these issues, saying it was my network and other statements referring to the fact that it was my fault the system wasn't working properly.

Dan Setter, IT Manger was able to log into Plaintiff's computer and found it was not Plaintiff's network and sent an email to Mrs. Simpson stating the following: Exhibit B

**Kelly,**

**I've connected to Judy's home laptop to run diagnostics and assess the situation.**

**Her network speed is blazing at 700 download and 250 upload, it is not network speed. The CPU and memory on her laptop look great, at a 30% threshold. I would worry if it was at 75% but nowhere near that so it is not a process or lack of horsepower on her laptop.**

**Judy is questioning some of the behavior of Excel icons and a new word doc and why certain things automatically launch and popups that hover over them. There is not much I can do from an IT perspective on that. I suggested that the nuances Judy is having with her icons and word docs that she reviews with you in person on Monday. _In the meantime I suggested that Judy soldiers on. It has been a difficult week and all of us have to make do. It has not been perfect._**

Plaintiff feels this too was hindering her ability to perform her job. Defendant did not have power and could not access the computer system to verify any information, notes we would put in the system, comments as to what we had done, as she would usually do when reviewing our accounts worked.

The winter storm we endured created a lot of stress for many residents of the state of Texas and many employees were faced with issues they don't usually face and Mrs. Simpson was not sympathetic to those issues and made demands upon the Plaintiff that were out of the usual in doing our job especially with the computer issues she was having.

On March the 2nd again Plaintiff was asked to join Defendants Dyer and Simpson in a "Verbal Counseling" meeting.

She was provided a document (Exhibit C) which stated at the top "Record of Verbal Counseling". The document was siting section 1:28 of the Rules and Discipline Policy:

**"Rude or disrespectful conduct towards a customer, patient, family member, employee or supervisor."**

The reason for this was because of the email Plaintiff had sent saying **"It's not my fault you can't access the "S" drive and because of that I shouldn't have to do "double work".**

Mrs. Dyer stated that because Mrs. Simpson didn't have power or water Plaintiff needed to make concessions for that and that if Plaintiff continued to disrespect her it would be grounds for termination as well as the statement from her **"When I tell you to do something you better do it or I'll fire your ass."**

What Defendants failed to mention in this "Verbal Counseling" the statement by Mrs. Simpson the day before, Exhibit A

***"Unfortunately I have not had the means to do much today since I have no power still. Thanks for being so cooperative.*** which Plaintiff feels was not only sarcastic but also a violation of the same rule in which a trail of emails which Plaintiff had requested be put in her personnel file would support.

Also upon further review of the emails between Mrs. Simpson and the Plaintiff, the statement that **"emailing me the records you were keeping would only take an additional couple of minutes,"** but upon a complete review of the emails Defendant states **"take the next 30 minutes if you need to"**

Defendant Dyer asked Plaintiff to sign this document which she refused. A couple days later Plaintiff submitted her reply to not only Defendants Dyer and Simpson (Exhibit D) but also to the President and CFO of the Company and shortly there after Plaintiff received an email from HR stating: (Exhibit E)

**"The HR received your complaint today and would like to speak to you since this is the first we are hearing about the issues you have raised.........."**

Because Plaintiff was asked to sign this document and was given a verbal threat of termination, HR should have either been in this meeting or at least investigate the reason for the "Verbal Counseling" especially since this was during a time employees of the company were out of their element and had to endure difficulties that they don't usually occur but it seems Defendant Dyer took it upon herself to override the policy and do what she wanted.

Upon Plaintiff's review of the "Forms of Discipline" under the Human Resource Management Policies and Procedures Manual (Exhibit F)it states under Forms of Discipline.

Forms of Discipline that may be used are:

    Verbal Counseling

    Written Correction Actions

    Unpaid Suspension

    Involuntary Termination

The rule continues to state:

**"Written disciplinary actions will be reviewed by HR to ensure the issue has been objectively investigated and properly documented before the action is taken. AlixaRX may exercise, in its sole and absolute discretion, any form of discipline deemed appropriate and is not intended to imply that an employee may be terminated only for cause nor after "at-will employment of the employee"**

The winter storm that occurred that week put a strain on everyone but the Defendant didn't take that into consideration but instead lashed out at the Plaintiff which is one of the reasons she is filing this complaint and to detour the Defendant from continuing this type of abusive behavior

## COUNT ONE

### Violations of the Equal Pay Act of 1963

Ms. Wilson and Plaintiff responded to the same posting from Orion Staffing, we were both told the position paid $19 an hour but Ms. Wilson demanded $20 and the Defendant pays her that whereas Plaintiff receives $2 less

Both of us make the same type of calls but as the call records will support, Plaintiff makes more calls per day than Ms. Wilson. We both perform the same job duties and instructions from the Defendant Kelly Simpson are the same when emails are sent to us.(Exhibit G) In fact Plaintiff feels she has more difficult accounts because of Patients being on Medicaid and more difficult to collect because of several billing issues.

Plaintiff feels their action in telling her they were unable to pay her what the recruiter stated was a violation of Company rule 1.28 and a Fraudulent Inducement of Employment in lying to her.

It should be stated as well that Ms. Wilson was not subjected to the type of calls the Plaintiff made when the Defendant decided to send out Statements to Patients after 20 some plus months.

## COUNT TWO

## Violations of Company Policies and Rules

Plaintiff believes the Defendants violated **six** rules under the Human Resources Management Policies and Procedures Manuel.

### HR-410 Forms of Discipline

Defendants Dyer and Simpson took it upon themselves not to inform HR of the Verbal Counseling that was put in writing and the threat of termination made especially since employees of the company had to endure unusual circumstances because of the winter storm.

No investigation was made surrounding the circumstances of the "Verbal Warning" since many of the employees had no power, problems with their systems as stated by Dan Settler in his email to Defendant Simpson on the 17th of February.

Cydney Wachi and Scott Brown head of HR did not become aware of the Verbal Counseling until Plaintiff sent her response to upper management.

Plaintiff feels Defendants Dyer and Simpson violated Rules 1.0, 1.3, 1.5, 1.28, 1.11 and 1.13 under their Policy and Procedures Guidelines.

## COUNT THREE

### Fraudulent Inducement of Employment

Plaintiff feels the Defendant committed this act against her for the following reasons.

Plaintiff responded to a posting in which she was told paid $19.00 an hour but was only offered $18.00 an hour due to the statement the Defendant had budget issues but later learned that the other person that applied for the same position was offered $19.00 an hour same as the posting and stated she would not take the job unless she got $20.00 in which Plaintiff learned roughly two months after her employment. She also learned that the company had a very good year and employees were given a bonus which one would think does not happen if you are having budget issues.

Plaintiff puts this before the Court, if indeed this was the issue why didn't Lorraine Dyer do as she stated to the Plaintiff in January when it was brought up in their meeting that she would have Kathy in HR look into it and again when it was brought up in the Verbal Counseling Meeting.....on the 2nd of March again telling the Plaintiff she had Kathy look into and Plaintiff finding out no such call was ever made to Libby, the recruiter that had spoken to her.

Plaintiff feels this is not only an act of fraud but a violation of Rule 1.28 in being disrespectful in lying to her pertaining to concerns of her salary.

## COUNT FOUR
### Hostile work environment

When the Defendant decided to send out statements to Medicaid patients that had not been sent in over 20 months it exposed the Plaintiff to a Hostile Work Environment in many aspects and exposing her to violations of State Law. The patients she called or their family members were degrading and insulting in their tone to her and telling how dare she call them. Stating they didn't have any money and in one instance a patient told Defendant Simpson how insensitive the Plaintiff was and unfeeling. Mrs. Simpson apologized to the patient and told her she would speak to the Plaintiff but when this was brought up at the meeting in January, Defendant Dyer told the Plaintiff "That's your job".

Plaintiff feels it was not her job because it was never told to her that she would have to call patients that hadn't received any type of statement or invoice in over 2 years or that she would be violating a state law in calling them and Plaintiff feels this is a violation of rules 1.5, 1.28 and 1.13

No one else in the Company was making these calls, not even Manuela Wilson.

Also when the Plaintiff found out that her phone displayed "Spam, High Risk" Defendant did not to resolve this and lied to the Plaintiff that she was going to send an email to the Manager of the IT Department but roughly 2 months later it was the Plaintiff that approached Mr. Crowder and was informed he never received any type of communication from Lorraine and when Mrs. Simpson heard this conversation she said to the Plaintiff in a very negative tone, "Did you go to Mike yourself".

-14

## COUNT FIVE
### Defamation of Character and Harassment

During the week of February 15th, Plaintiff was required to work outside of her normal work environment, having constant issues with her computer, having to use her own cell phone in holding the phone in one hand and trying to work the computer with the other, but instead of Mrs. Simpson being compassionate and understanding she was "nick-picky" and "finger pointing" with such comments as **"Manuela isn't having any problems" "what do you mean the system locked up? I have had no issues with Payer Express today" "it's your network, no one else is having issues like this" Exhibit A** and especially the comment **"Thanks for being so cooperative"**, which as Plaintiff has stated was considered a sarcastic remark to her which is why she feels should be considered a violation of their own rule in being disrespectful to the Plaintiff.

The comment Plaintiff made about Defendant not having access to the "S" drive and causing her "double work" was appropriate because of the pressure Defendant Simpson was putting on her and not having electricity or water is not a work related issue and should have nothing to do with Plaintiff's job performance.

Plaintiff even sent a "Snap short" of her spreadsheet which is on the "S" drive which was not sufficient enough for the Defendant but these are the same spreadsheets that are normally stored for Mrs. Simpson to review our work.

Plaintiff puts this before the Court as well, if Defendant Simpson did not have power, what is the purpose of sending a detailed report to her every day because not only could she not get onto the "S" drive but with no power she was not even able to get into the Company's computer system. Our work is stored on the "S" drive and she would have had the ability when power came back on to check our work or when she came back to the office when she had the proper "tools" to verify information.

To send a report that seemed to be non related to our productivity at the time put extra stress on the Plaintiff and caused her additional work to do outside of her required responsibilities just because the Defendant had no power at her place of residence.

Plaintiff is always at her desk on time ready to start her work day. She does her work in a timely manner and does not participate in office chit chat.

Many employees around her that have heard her on the phone in her collection efforts have commented on how she handles patients and the ability to either get the full amount owed or reach a settlement right there and then.

For these reasons as stated Plaintiff seeks punitive damages in the amount of $75,000 for which $30,000 for violating a Federal law and putting her still at risk in violating Laws because she still receives calls from Medicaid Patients that are still receiving these "glitch" statements as well as their actions under Fraudulent Inducement for Employment, $45,000 for failure to follow several rules under their own Company Policy and Procedures and for hindering Plaintiff's job performance and such amount to double if Defendant terminates Plaintiff for any such reason related to her civil action. Plaintiff feels based on previous employees, Defendant Dyer will find a way to terminate her or get her to leave on her own because of her harassment.

Defendant is in an industry that services Nursing Home Facilities and should have compassion and understanding to not only those that they serve but to their employees as well for the difficult work they are demanded to do.

Plaintiff has heard as well that this is not the first time Mrs. Dyer has conducted herself as a "DO WANT I SAY OR ELSE" Supervisor and Plaintiff intends to Subpoena personnel records to support this.

It should be noted as well at the time of this filing roughly 2 weeks after Plaintiff submitted her response from the Verbal Counseling, HR has failed to address any of the issues she has raised and as such feels compelled to file legal against them.

Plaintiff seeks court costs and any other costs in which she would have to pay to support her action in Court.

Respectfully Submitted

*Judy D. Brown*

Judy D Brown

Plaintiff

Date March 19, 2021

770 Fairway Dr. #1313
Coppell, TX 75019
682-701-9471
jd.brown2017@yahoo.com


Jury Trial Demanded

This page intentionally blank