**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

FILED

APR 1 4 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

**Judy D. Brown**
**770 Fairway Dr. #1313**
**Coppell, Texas 75019**

      **Plaintiff**

        **v.**

**ALIXA-RX**
**Lorraine Dyer**
**Kelly Simpson**
**6400 Pinecrest Dr. #200**
**Plano, Texas, 75024**

      **Defendants**

                    **CIVIL ACTION NO. 4:21-cv-284**

**AMENDED COMPLAINT**

Plaintiff brings this action against the Defendants for claims of Harassment, Hindrance in the performance of her job, Violations of Defendant's Company Policy and Procedures sections HR-410, 1.0,1.5, 1.11,1.13,1.22 and 1.28. Exposure to a Hostile work environment due to Defendant's actions, threat of termination, defamation of character and Fraudulent Inducement of Employment. Plaintiff also claims violations under Texas Penal Code 37.09

## **BACKGROUND**

In September of 2020 Plaintiff responded to a job posting for a Collections Specialist position in Plano Texas.

The recruiter shortly thereafter contacted the Plaintiff and felt she was a good fit for the position.  An in person interview was held between the Plaintiff and Kelly Simpson, one of the Defendants.

After the interview Plaintiff received a call from the recruiter stating they were offering the Plaintiff a position, but not at the $19 which was discussed but an offer of $18 an hour.  The recruiter stated that the Defendant was not able to pay the $19 due to Budget issues which Plaintiff felt if they had Budget issues they never should have told the recruiter they would pay $19 an hour.

On the 5th of October Plaintiff started her job as a Collections Specialist with the Defendant, she learned their computer system and within the first two weeks was collecting money and negotiating settlements which she received praise from Defendant Kelly Simpson and other employees around her that heard her on the phone with her negotiations and collection tactics.

Mrs. Simpson also stated as well on how Plaintiff handled her accounts and stated in the presence of Ms. Manuela Wilson, "you're the collector" compared to Manuela.

-2-

In November of 2020 the Defendant made a business decision to "fix" a computer glitch, which she later learned was a decision by the company to switch Medicaid patients to Private pay without their written consent or knowledge which is a requirement under the guidelines for Medicaid Providers. The Plaintiff feels this was more or less a deceptive business practice in which they required the Plaintiff to participate in and the only one making these calls. Because the statements were not sent out 30 days after service but some 365 days later made Patients and their family extremely angry and vented their anger to the Plaintiff which caused her emotional and physical distress.

On Christmas Eve, 2020 Plaintiff was required to call these past due patients and it was at that time she learned her phone display was coming up as a Spam call, subjecting her to rude and degrading remarks, something which was not in her job description.

Around the 12th of January, Plaintiff sent a text to Kelly Simpson informing her because of the stress these calls were having on her she was going to take the day off and try to relax.

On the 14th of January, Plaintiff had a meeting with Defendants, Lorraine Dyer and Kelly Simpson.  Plaintiff put two concerns to them. 1.  Plaintiff brought the issue of her salary to the Defendants, she told them that Libby, the recruiter had informed her the rate of pay was $19 an hour but when the offer came in they told her because of the budget they could only offer $18, in which Lorraine came back stating in an unfriendly context, "You accepted it".

Plaintiff became aware of the difference of pay between her and Manuela Wilson shortly before this meeting.  Ms. Wilson responded to the same posting with the same rate of pay, but when they offered her the $19 she replied she would not take the position unless she was paid $20 an hour.  Plaintiff and Ms. Wilson have the same responsibilities, call the same type of accounts but in comparison Plaintiff had more accounts that fell under the "computer glitch" and was subjected to more abusive and negative remarks made by patients or family members.  Plaintiff later learned that is was against State Law and probably Federal Law in calling Medicaid patients seeking money which the Defendant should have known and never informed the Plaintiff therefore putting the Plaintiff in a situation of violating Laws.

Also at this meeting Plaintiff made them aware of the Spam display coming up on her phone when making out bound calls, Plaintiff felt because of this display patients were not answering their phone or when they did they accused the Plaintiff of be a "scammer" out to screw them of money.  Defendant Dyer stated she would have IT look into this.

Plaintiff later learned that Mrs. Dyer never followed up on either of these issues Plaintiff had brought to her attention and therefore violating sections 1.28, 1.13 and 1.22 under the Company's rules and procedures policy and exposing her to a hostile work environment.

At this meeting as well Mrs. Dyer told the Plaintiff that she wanted her to keep her voice down....Plaintiff was shocked....being a good collector is having a strong voice presence and Plaintiff has been a successful collector for more than 22 years and no previous employers had ever told her to "lower" her voice as well as several of Plaintiff's previous employers had called her a "Sweetie Collector" because of her approach in retrieving money.

Plaintiff feels this was not only an attack on her personality but also a hindrance in performing her job properly.

It should be noted as well that there are several other employees in the company that have a loud speaking voice and the way the office is set up they can be considered as well as being loud and Mrs. Dyer never made any such comments to them.

It should be stated here as well that the last quarter of 2020 Plaintiff collected more than $82,000 which she believes was more because she found several accounts Defendant had failed to calculate in and was told no other collector that had worked there brought that much in.

Plaintiff was on the phone more than 80% of the day dealing with irate patients or their family members in trying to collect money.  There were issues of billing, medications not covered by insurance and other causes for concern of billing errors which the Plaintiff had to resolve in a professional manner.

The week of February 15th, one of the worst storms in Texas history came upon many employers when their employees were forced to work from home, Plaintiff was one of those employees. Her work environment usually consisted of two monitors and easy access to several applications in performing her job.

Plaintiff was provided only one monitor in trying to access 6 or more applications with the system constantly going into "sleep mode" every minute or so, which when at her work station did happen but not as quickly as what the Plaintiff was experiencing at home.

Many other employees did not have electricity and some without water which was the case of Defendant Simpson.

Plaintiff did have electricity and water and even though her work productivity was slow due to having pop ups freezing her ability to access the system she was struggling on.

At around 4:00 on the afternoon of the 15th of roughly half an hour before Plaintiff was scheduled to punch out she received the following email from Mrs. Simpson:

**"Can you both send me a "detailed" report with all of the accounts you worked today?  I know inbound calls have been an issue so I want to make sure we have made up for it on outbound calls.  Thank You."**

Plaintiff replied back:

**"If you look under my spreadsheets you can see the accounts I touched because it will have the dates....."**

Reply from Defendant:

**"Yes, I am unable to get on the "S" drive.  Please send to my email."**

**"All employees who work from home have to create a list of their work day.  It does not have anything to do with me questioning your work.  Please create the list and send it to me, if you need the next 30 minutes to do so that is fine"**

— 6 —

**NOTE:  This was the first time Plaintiff was informed of this policy** as well as the fact Plaintiff was not an employee that worked from her home, she worked in the office in Plano, Texas on an 8-4:30 regular schedule.

Plaintiff:

**"I wish you had told me that this morning instead of at the last minute."**

Defendant:

**"Unfortunately I have not had the means to do much today since I have no power still.   Thanks for being so cooperative."**

Plaintiff took this as a sarcastic remark from the Defendant and in doing so should be a violation under Section 1.28 of the Company's Policies and Procedures guidelines.

The next day February 16th at 9:30 in the morning Mrs. Simpson sent the following email to the Plaintiff:

**"Please remember to keep track of the accounts you worked today. Please send me the details of the accounts you worked before the end of the day"**

Plaintiff replied:

**"What do you mean when you say details…..."**

Defendant's response:

**"I need to know what exactly your workday looked like. The accounts you researched, called and spoke with anyone."**

Plaintiff's reply to Mrs. Simpson:

**"It's not my fault you can't access the "S" drive and because of that I shouldn't have to do "double" work"**

_7_

Plaintiff continued to have issues with her computer, the pop-ups were worse which kept the Plaintiff from accessing the applications on the server to perform her duties as a collector and Plaintiff would send Mrs. Simpson emails informing her of these issues, Kelly replied back stating Manuela didn't have these issues, saying it was my network and other statements referring to the fact that it was my fault the system wasn't working properly.

Dan Setter, IT Manger was able to log into Plaintiff's computer and found it was not Plaintiff's network and sent an email to Mrs. Simpson stating the following:

**Kelly,**

**I've connected to Judy's home laptop to run diagnostics and assess the situation.**

**Her network speed is blazing at 700 download and 250 upload, it is not network speed.  The CPU and memory on her laptop look great, at a 30% threshold.  I would worry if it was at 75% but nowhere near that so it is not a process or lack of horsepower on her laptop.**

**Judy is questioning some of the behavior of Excel icons and a new word doc and why certain things automatically launch and popups that hover over them.  There is not much I can do from an IT perspective on that.  I suggested that the nuances Judy is having with her icons and word docs that she reviews with you in person on Monday.  _In the meantime I suggested that Judy soldiers on.  It has been a difficult week and all of us have to make do.  It has not been perfect._**

Plaintiff feels this too was hindering her ability to perform her job. Defendant did not have power and could not access the computer system to verify any information, notes we would put in the system, comments as to what we had done, as she would usually do when reviewing our accounts worked.

~ 8 ~

The winter storm we endured created a lot of stress for many residents of the state of Texas and many employees were faced with issues they don't usually face and Mrs. Simpson was not sympathetic to those issues and made demands upon the Plaintiff that were out of the usual in doing our job especially with the computer issues she was having.

On March the 2nd again Plaintiff was asked to join Defendants Dyer and Simpson in a "Verbal Counseling" meeting.

She was provided a document  which stated at the top "Record of Verbal Counseling".  The document was siting section 1:28 of the Rules and Discipline Policy:

**"Rude or disrespectful conduct towards a customer, patient, family member, employee or supervisor."**

The reason for this was because of the email Plaintiff had sent saying **"It's not my fault you can't access the "S" drive and because of that I shouldn't have to do "double work".**

Mrs. Dyer stated that because Mrs. Simpson didn't have power or water Plaintiff needed to make concessions for that and that if Plaintiff continued to disrespect her it would be grounds for termination as well as the statement from her **"When I tell you to do something you better do it or I'll fire your ass."**

What Defendants failed to mention in this "Verbal Counseling" the statement by Mrs. Simpson the day before

*"Unfortunately I have not had the means to do much today since I have no power still.  Thanks for being so cooperative.* which Plaintiff feels was not only sarcastic but also a violation of the same rule in which a trail of emails which Plaintiff had requested be put in her personnel file would support.

Also upon further review of the emails between Mrs. Simpson and the Plaintiff, the statement that **"emailing me the records you were keeping would only take an additional couple of minutes,"** but upon a complete review of the emails Defendant states **"take the next 30 minutes if you need to'"**

**"The HR received your complaint today and would like to speak to you since this is the first we are hearing about the issues you have raised………"**

Because Plaintiff was asked to sign this document and was given a verbal threat of termination, HR should have either been in this meeting or at least investigate the reason for the "Verbal Counseling" especially since this was during a time employees of the company were out of their element and had to endure difficulties that they don't usually occur but it seems Defendant Dyer took it upon herself to override the policy and do what she wanted.

Upon Plaintiff's review of the "Forms of Discipline" under the Human Resource Management Policies and Procedures Manual (Exhibit A) it states under Forms of Discipline.

Forms of Discipline that may be used are:

      Verbal Counseling

      Written Correction Actions

      Unpaid Suspension

      Involuntary Termination

The rule continues to state:

**"Written disciplinary actions will be reviewed by HR to ensure the issue has been objectively investigated and properly documented before the action is taken.  AlixaRX may exercise, in its sole and absolute discretion, any form of discipline deemed appropriate and is not intended to imply that an employee may be terminated only for cause nor after "at-will employment of the employee"**

The winter storm that occurred that week put a strain on everyone but the Defendant didn't take that into consideration but instead lashed out at the Plaintiff which is one of the reasons she is filing this complaint and to detour the Defendant from continuing this type of abusive behavior

-11-

## COUNT ONE

### Violations of Company Policies and Rules

Defendant violated several Policies under their Company guidelines (Exhibit A) which she has circled mainly sections

**1.1 Violations of Company policy, procedure, Code of Conduct and Business areas or other instances of improper conduct not specifically listed.**

**1.5 Engaging in activity or making false or offensive statements which are meant to intentionally harm the reputation of the company, employees, officers, its products or services, customers, or service providers.**

Under the Medicaid Provider section, **ACCEPTANCE AND AGREEMENT** it reads as follows:

**A provider may charge a Medicaid beneficiary, including a Medicaid or FHPlus beneficiary enrolled in a managed care plan, only when both parties have agreed prior to the rendering of the service that the beneficiary is being seen as a private pay patient.**

**This agreement must be mutual and voluntary.  It is suggested that providers keep the beneficiary's signed consent to be seen as a private pay patient on file.**

-12-

Plaintiff submits documents under Exhibit B supporting violations of not only company policy but as well guidelines under Medicaid, the first is a letter from Polk County Social Services regarding a patient that had been billed as a Private Pay patient and had been on Medicaid for several years and the letter also states that State Medicaid had never received any claims from either the Defendant or the facility where he was staying and should only be billed for co-pays.  The invoice attached is showing the patient was charged full cost for the two drugs he received as well showing a balance owning as of the 31st of January of over $1200 and Medicaid guidelines.  This is the same individual that Plaintiff provided contact information to Cydney Wachi from HR and learned that when this letter was sent to her neither HR or Amanda Stewart in Compliance ever reached out to her.  This is one of the emails that Plaintiff requested in her "Legal Hold" request, which more than likely is gone.

The other documents are emails from the HUB on calls they received from Medicaid patients **"Voicemails are regarding the A/R group code change from Medicaid to Private pay"** that were now being billed as private pay and an email from a family member wanting to know why after so long her father was now receiving a bill and was on Medicaid.

These patients never signed any consent form giving the Defendant permission to bill him as private pay.

Plaintiff also learned when she called family members of these patients was told the cost of their medications was included in their stay at the facility and billed Medicaid which is why Plaintiff has requested contracts the Defendants has with these facilities.

–13–

Plaintiff made more than 300 calls to these patients which were emailed to her on a Spreadsheet from Defendant Simpson which she is requesting now through the Court.

Plaintiff feels this falls under violations of Rule 1.28 and 1.5

**Rule 1.28** Rude or disrespectful conduct towards a customer, patient, family member, employee or supervisor (Exhibit C) emails from Defendant Simpson during the week of February 15th as well as her actions in turning off her phone from receiving calls from the toll free billing line and sending her accounts to work that she knew would be a violation of laws.

## COUNT TWO
### Fraudulent Inducement of Employment

Plaintiff feels the Defendant committed this act against her for the following reasons.

Plaintiff responded to a posting in which she was told paid $19.00 an hour but was only offered $18.00 an hour due to the statement the Defendant had budget issues but later learned that the other person that applied for the same position was offered $19.00 an hour same as the posting and stated she would not take the job unless she got $20.00 in which Plaintiff learned roughly two months after her employment. She also learned that the company had a very good year and employees were given a bonus which one would think does not happen if you are having budget issues.

-14-

Plaintiff puts this before the Court, if indeed this was the issue why didn't Lorraine Dyer do as she stated to the Plaintiff in January when it was brought up in their meeting that she would have Kathy in HR look into it and again when it was brought up in the Verbal Counseling Meeting.....on the 2nd of March again telling the Plaintiff she had Kathy look into and Plaintiff finding out no such call was ever made to Libby, the recruiter that had spoken to her.

Plaintiff feels this is not only an act of fraud but a violation of Rule 1.28 in being disrespectful in lying to her pertaining to concerns of her salary.

### COUNT THREE

### Hostile work environment and Hindrance of her Job

When the Defendant decided to send out statements to Medicaid patients now being billed as "Private Pay" from their decision to change them in their system, such patients had not received in over 20 months it exposed the Plaintiff to a Hostile Work Environment in many aspects and exposing her to violations of State and Federal Law. The patients she called or their family members were degrading and insulting in their tone to her and telling how dare she call them.  Stating they didn't have any money and in one instance a patient told Defendant Simpson how insensitive the Plaintiff was and unfeeling.  Mrs. Simpson apologized to the patient and told her she would speak to the Plaintiff but when this was brought up at the meeting in January, Defendant Dyer told the Plaintiff "That's your job".

Plaintiff feels it was not her job because it was never told to her that she would have to call patients that hadn't received any type of statement or invoice in over 2 years or that she would be violating laws under Federal and State in calling them and Plaintiff feels this is also a violation of rules 1.5, 1.28 and 1.13.

Plaintiff has also learned that you cannot call a Medicaid patient for more than what the co-pays are and some of these statements have balances over $2500 as Exhibit B supports and fines for calling such patients in seeking money for more than the co-pays run from $20k to $50K

Also when the Plaintiff found out that her phone displayed "Spam, High Risk" Defendant did not to resolve this and lied to the Plaintiff that she was going to send an email to the Manager of the IT Department but roughly 2 months later it was the Plaintiff that approached Mr. Crowder and was informed he never received any type of communication from Lorraine and when Mrs. Simpson heard this conversation she said to the Plaintiff in a very negative tone, "Did you go to Mike yourself".

Plaintiff became aware of the Defendant's toll free billing line was not ringing to her on the 25th of March which she normally gets at least 4-5 calls a day.  When an email  was sent to Defendant Simpson on the 31st of March she informed her of such....not more than an hour later the Billing line was turned back on.

-16-

Defendant sent the Plaintiff a spreadsheet telling her that this was a 7 day summary of the billing calls but only had two dates on the spreadsheet, March 24th (one day after they received service) when the line was turned off from ringing to her desk and the last day the 31st of March when the phone was turned by on, shortly after she sent her email. Exhibit D

Exhibit D also has a printout of a payment Defendant Simpson received on the 26th of March from the billing line for one of Plaintiff's account which Plaintiff heard her telling the HUB to transfer the call to her.

This is the reason as well to why the Plaintiff is requesting through discovery a full MTEL 7 day activity detail report.

## COUNT FOUR
### Violations of Texas Penal Code 37.09

On the 29th of March the Plaintiff hand delivered a Legal Hold Notice to the Defendant (Exhibit E) which would support her complaint. On the 6th of April roughly a week later Plaintiff received an email from the Manager of Defendant's IT department (Exhibit F) that a situation had occurred on the previous Saturday which deleted documents under the "Legal Hold Notice" and even after this notice was sent out other emails from the Plaintiff to not only attorneys for the Defendant but also to Legal have now disappeared.

Plaintiff made a call to Nexus Tek and was told they had no record of any disruption in service as well as the statement "A computer only does what you tell it to do."

−17−

Shortly before this email was sent out from IT Plaintiff received an email from HR telling her that her attendance in a compliance meeting was "not optional". The Defendant wanted to discuss the issue of Medicaid violations which in her reply she stated on page 14 of her complaint she made reference to this and was now a legal issue.

Plaintiff forwarded that email to her personal computer as well as Legal and that email as well as others are now gone.

It should be noted here that Plaintiff had copied the attorneys for the Defendants regarding refusing to speak to anyone in Defendant's employ regarding her lawsuit which as stated above, wanted to talk to her about calling Medicaid patients.

In the trial of emails (Exhibit G) from the Plaintiff to the Defendant in responding that she was not going to have any conference with them because the issue was in her complaint.

Email from their attorneys state:

**The e-mail you forwarded below appears to be a workplace issue; not one involving your lawsuit. In the meantime, any other workplace investigations or workplace complaints are outside of our purview and instead will be handled according to your employer's policies and procedures, as you are a current employee of Alixa-RX**

The complaint involved violations of their policies and procedures which was in Plaintiff's civil action. Plaintiff felt that the Defendants were pushing her for information because they already knew they violated the law.

—18—

The Question Plaintiff puts before the Court, if a system disruption had occurred on Saturday the 2nd why did it take IT over three days to send a notice out to employees of the Defendant and as to why it was sent shortly after the Plaintiff reused to "co-operate" in a meaning to discuss Medicaid Billing, which again they already knew.

It should be noted here that this is not the first time the Defendant has been accused of Fraud in a legal action, case 4:15-cv-000766 where a jury in 2018 awarded damages against the Defendant for 24 million dollars for violating several Non Disclosure Agreements.

Defendant has failed to sign the Legal Hold Notice acknowledging their compliance as well as failing to file an answer to Plaintiff's complaint which is why she seeks an Order for Discovery.

## **DAMAGES**

For these reasons as stated Plaintiff seeks punitive damages in the amount of $350,000 for all Counts listed above from Defendants actions as well as subjecting her to violations of State and Federal Law when calling Medicaid patients requesting money.

Plaintiff seeks court costs and any other costs in which she would have to pay to support her action in Court.

Plaintiff is also attaching a Motion with a Proposed Order for Discovery for the Defendant to produce documents she attached to her Legal Hold Notice which will support her complaint as well as violations under Federal Law which was the reason Defendants moved this case and as such prevent any future destruction of documents.

Respectfully Submitted

*Judy D. Brown*

Judy D Brown
Plaintiff

Date *April 12, 2021*

770 Fairway Dr. #1313
Coppell, TX 75019
682-701-9471
jd.brown2017@yahoo.com

Jury Trial Demanded

CC:  kristin.higgins@ogletree.com
       jamie.ashton@ogletree.com