**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

**FILED**

AUG 1 7 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

**Judy D. Brown**
**770 Fairway Dr. #1313**
**Coppell, Texas 75019**

**CIVIL ACTION NO. 4:21-cv-284**

**Plaintiff**

**JURY TRIAL DEMANDED**

**v.**

**ALIXA-RX**
**Lorraine Dyer**
**Kelly Simpson**
**6400 Pinecrest Dr. #200**
**Plano, Texas, 75024**

**Defendants**

## AMENDED COMPLAINT

Plaintiff amends her Complaint on grounds of Fraudulent Inducement of Employment, Violations of Company Policies in failure to adhere to Federal and State Regulations regarding the billing of Medicaid Patients in Long Term Care Facilities and exposing the Plaintiff to a Hostile Work Environment because of these actions.

Plaintiff also claims damages for involving the Plaintiff as their "tool" for violations under the False Claims Act as well as Mail Fraud.

Plaintiff Judy D. Brown hereby alleges the following:

## **THE PARTIES**

1. Judy Brown
   770 Fairway Dr., #1313
   Coppell Texas 75019
   682-701-9471
   Plaintiff

2  Alixa-RX
   6400 Pinecrest Dr. #200
   Plano, Texas 75024
   Defendant

3. Lorraine Dyer
   6400 Pinecrest Dr. #200
   Plano, Texas 75024
   Defendant

4. Kelly Simpson
   6400 Pinecrest Dr. #200
   Plano, Texas 75024
   Defendant

5  Kristin Snyder Higgins
   Jamie Ashton
   8117 Preston Road, Suite 500
   Dallas Tx 75225
   (214) 987-3800
   Attorneys for Defendants

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. 1332 this Court has original jurisdiction over Plaintiff's claim because the matter in controversy exceeds $75,000 and under 28 U.S.Code 1391 both the Plaintiff and the Defendants are residents of the State of Texas and conduct their business operations in the State of Texas

## FACTUAL BACKGROUND

7.  Plaintiff Applied for the Collections Specialist 1 position through a job posting on the internet around the middle of September 2020.

8.  Contacted by a recruiter from Orion Staffing, Libby Odegaad. Went over job description and collection experience.

9.  Recruiter asked the Plaintiff what the salary range she was looking for, reply from her stating the job paid $19.00 an hour.

10. September 24th Interview with Defendant Kelly Simpson, went over job description.

11. Was told would be calling Patients in Long Term Care facilities on past due invoices.

12. Never informed the Plaintiff of Federal and State Requirements that it was against State and Federal law to contact Medicaid Patients for money pertaining to OTC drugs that were included in the facility's cost report to Medicaid.

13. Was never provided State Imposed Billing Requirements as part of her job description.

14. Plaintiff received call from recruiter stating Defendants could not offer the $19 an hour but only $18 an hour due to budget issues.

15. Plaintiff accepted the job due to the unemployment environment from the Pandemic.

16. Plaintiff started this position on the 5th of October and within the first month she had collected more than $20,000, above any previous collectors that had worked for the Defendant.

17. In November of 2020 Defendant made a business decision to mail out Statements to Medicaid Patients for past due amounts pertaining to over the counter drugs, more than $2,000 per each account going back more than 2 years.

18. The Defendant had changed Medicaid Patients to Private Pay, a violation of Federal and State Law

19. Defendant Simpson informed the Plaintiff the reason these statements were now being mailed out was because of a computer glitch which was not corrected.

20. In December of 2020 Plaintiff started receiving "nasty" phone calls from family members informing her that the medications she was seeking payment on were included in the resident's bill to Medicaid.

21. This was also the same time Plaintiff had inquired about the job posting her co-worker Manuela Wilson had applied for, which was the same job posting she had responded to.

22. Ms. Wilson applied for the same job, Collections Specialist 1 but when the Defendants offered her the salary of $19 an hour, she refused and they countered at $20 which she accepted.

23. Around the 13th of January Plaintiff had been overwhelmed with phone calls from family members of patients she was told to collect money from. She took a couple days off because of the emotional stress this was causing.

24. Shortly thereafter Defendants Dyer and Simpson had a meeting with the Plaintiff telling her when she informed them of the nasty calls she was receiving, Ms. Dyer stated "That's your job".

25.  The issue of her pay was also brought up and Defendant Dyer stated to the Plaintiff "you accepted the job", but she would speak to Kathy from HR on what Orion staffing had told her.

26.  This issue was not addressed again until her letter to HR in early March after her second meeting with Defendants Dyer and Simpson.

27. The beginning of February an upper management meeting was held due to complaints being made to the HUB from family members of the patients in how the Defendants were violating State law in requesting money from a Medicaid patient, Amanda Stewart was present at this meeting.

28.  Shortly thereafter Defendant Simpson told the Plaintiff that she was not to call these patients from this facility and if any called in she was instructed to say "this is just a courtesy call".  How do you explain a "courtesy call" when your job is to collect money.

29.  On the 15th of March Plaintiff received an email from Cydney Wachi from their HR department pertaining to her concern of Fraudulent Inducement of Employment.  Ms Wachi stated to the Plaintiff in her email that Ms. Dyer was going to speak with Kathy Davis about her concerns regarding her pay and states **"Lorraine stated "you accepted the job at $18" but stated she would talk to Kathy about the issue"** In Speaking with Lorraine she stated that she did walk back to discuss this issue verbally with Kathy the same day of your meeting in January, however, Kathy cannot remember if this happened or not due to it being almost 2 months ago.  The email went on to say that they had spoken to Libby, the recruiter but when Plaintiff contacted her after she left her employment with the Defendant, the recruiter informed her that she had never spoken to the Defendant since her hiring

30.  Between February and March Plaintiff learned of the violations the Defendants were committing in sending out statements more than 20 months in age to Medicaid patients for over the counter drugs which under Federal law were to be included in the Facility's cost report to Medicaid.

31. Between March 5th and April 5 the Plaintiff received several emails from HR pertaining to billing Medicaid patients for money and more so after she filed her complaint on the 19th of March.

32.  The patients in question were on a spreadsheet which Defendant Simpson sent to her on a daily basis, very few had amounts under $2,000 for the time frame going back to 2019.

33.  Also in February Plaintiff was receiving emails from Defendant Simpson that were sent to her from calls family members were making to the HUB.  The subject line of these emails said "changing the AR group code from Medicaid to Private.

34.  Upon research Plaintiff learned that under the State requirements for these patients they had to sign an "agreement"  if they were to be converted to private pay, Plaintiff learned no such agreement existed.

35.  Plaintiff also learned at this time when she researched the accounts she was required to get money from that Medicaid had denied many of these claims due to mistakes not just from the Defendant but also from the facility and then ended up for the Patient to Pay which was against State and Federal Law.

36.  Plaintiff started receiving calls not only from family members but also from County Administrators that calling Medicaid Patients for Money was a violation of their agreement with the Defendant.

37.  Paralegal Aisha Lindsey informed the Plaintiff as well that she had told Defendant Dyer it was against the agreements they had with the states to contact Medicaid patients for money, which was ignored.  Ms. Lindsey has yet to be deposed.

38.  Plaintiff filed her Civil Action against the Defendant on the 19th of March in Collin County, which included violations of State and Federal Law pertaining to calling Medicaid Patients for money

39.  On the 8th of April attorneys for the Defendant moved the civil action to Federal Court.

40.  Between the 24th of March and April 5th acts of retaliation took place against the Plaintiff.

   A.  Defendant Simpson turned off Plaintiff's phone from the toll free billing line from March the 24th till the morning of March 31 when she sent Ms Simpson an email confronting her of this action. Plaintiff usually receives more than 5 calls a day from this line which will be supported by the MITEL billing summary

   B.  She received an email from Defendant Simpson instructing her that someone had complained about her getting up and going to another co-workers cubicle.  Plaintiff later learned this request was made by Amanda Stewart after she saw the Plaintiff at the desk of Aisha Lindsey, the company's paralegal and a witness she plans to depose.

   C.  Amanda Stewart also contacted the Plaintiff on the 30th of March in wanting her to attend a meeting with her and Defendants Simpson and Dyer regarding her complaint in calling Medicaid patients for money, after she had sent a cease and desist notice.

41. On the 5th of April Plaintiff received an email from Cydney Wachi that it was not optional for her to deny her attendance at this meeting.

42. Plaintiff took the rest of the week off for PTO time.

43. On the afternoon of April 12, Plaintiff packed her personal belongings and departed the building while the VP of HR watched her every move and also wanting her to talk to him.

44. On the 27th of April the Defendant was notified by the Minnesota Dept of Health Services of an audit pertaining to three Medicaid patients for billing practices from 2018-2019, Plaintiff has requested such from the Defendant through Discovery as well.

45. As of the date of this filing the Defendant has failed to provide documents as requested supporting her complaint through discovery and her Motion for an order to Compel

46. Plaintiff restates and re-alleges each and every allegation Paragraphs 1 through 45 above as if fully set forth herein.

## Summary of the Arguments

47.  Plaintiff's actions against the Defendants are based on what she has obtained from State and Federal websites and documents submitted through initial discovery and a recent case settled between the Defendant and the United States Justice Department for the same and similar acts.

-

## ARGUMENTS

## COUNT ONE

### Violations of Company Policies and Rules

48. Defendant violated several Policies including those under their "Legal Responsibilities"  (Exhibit A)

    **(a) 1.1 Violations of Company policy, procedure, Code of Conduct and Business areas or other instances of improper conduct not specifically listed.**

    **(b) 1.5 Engaging in activity or making false or offensive statements which are meant to intentionally harm the reputation of the company, employees, officers, its products or services, customers, or service providers.**

    **(c) "Never change or tamper with information that has been entered into any record.  Follow Company policy and all legal requirements when amending records of any kind.  Whenever possible, the original author should make corrections after consulting with a supervisor to discuss the reason for the change."** id. *(FCA 31 U.S.C. 3729(a)(1)(A) & 3729(b)(1)).,(18 U.S.C Chapter 63 1346-1347).,(United States ex rel. Gharavi v Alixa-RX et al. 1:17-CV-00455-JPB).*

49. **OUR LEGAL RESPONSIBILITIES**

All pharmacy companies operate under a strict and complex set of federal, state and local laws and regulations for licensing and certification.  These regulations govern the delivery of care to patients and a wide range of supporting functions including, but not limited to, documentation, records management, and claims submission.

50. **Alixa-RX believes that the claims we submit for payment will be just and accurate when we follow our policies and procedures** and use the systems we have in place. **Our Company has training to prevent improper billing. We also have policies and procedures to detect and correct an improper claim.**

51. Plaintiff submits documents under Exhibit B supporting violations of not only company policy but as well Requirements under Federal and State Law under Medicaid. The first is a letter from Polk County Social Services regarding a patient that had been billed as a Private Pay patient and had been on Medicaid for several years and the letter also states that State Medicaid had never received any claims from either the Defendant or the facility where he was staying and should only be billed for co-pays.  The invoice attached is showing the patient was charged full cost for the two drugs he received as well showing a balance owning as of the 31st of January of over $1200 and Medicaid guidelines.  This is the same individual that Plaintiff provided contact information to Cydney Wachi from HR and learned that when this letter was sent to her neither HR or Amanda Stewart in Compliance ever reached out to her., id.(FCA 31 U.S.C. 3729(a)(1)(A) & 3729(b)(1)).,(18 U.S.C Chapter 63 1346-1347))., (United States ex rel. Gharavi v Alixa-RX et al. 1:17-CV-00455-JPB).

52. Other documents are emails from the HUB on calls they received from Medicaid patients **"Voicemails are regarding the A/R group code change from Medicaid to Private pay"** that were now being billed as private pay and an email from a family member wanting to know why after so long her father was now receiving a bill and was on Medicaid.

53.  These patients never signed any consent form giving the Defendant permission to bill them as private pay. id.*(FCA 31 U.S.C. 3729(a)(1)(A) & 3729(b)(1)).,(18 U.S.C Chapter 63 1346-1347))., (United States ex rel. Gharavi v Alixa-RX et al. 1:17-CV-00455-JPB).),(Golden G. Higgwe, D.P.M. v The Inspector General, Docket No. C-04-75, Decision No. CR 1229).*

54. Plaintiff also learned when she called family members of these patients was told the cost of their medications was included in their stay at the facility and billed Medicaid which is why Plaintiff has requested agreements the Defendant has with these facilities.

55. Plaintiff received an email from Defendant's paralegal on the 27th of April that the Dept of Minnesota Health Services was conducting an audit pertaining to 3 Medicaid patients (Exhibit B)

56. Plaintiff made more than 300 calls weekly to these patients or family members which were emailed to her on a Spreadsheet from Defendant Simpson which she has also requested through the Court.

57. Plaintiff restates and re-alleges each and every allegation Paragraphs 1 through 56 above as if fully set forth herein

## COUNT TWO

### Fraudulent Inducement of Employment

58. Plaintiff feels the Defendant committed this act against her for the following reasons.

59. Plaintiff responded to a posting in which she was told paid $19.00 an hour but was only offered $18.00 an hour due to the statement the Defendant had budget issues but later learned that the other person that applied for the same position was offered $19.00 an hour same as the posting and stated she would not take the job unless she got $20.00 in which Plaintiff learned roughly two months after her employment.

60.  She found out that the company had a very good year and employees were given a bonus which one would think does not happen if you are having budget issues.

61.  Plaintiff also learned through Defendants submission from initial discovery her Job description reads:

62. **"Performs all duties related to the timely and efficient collection of receivables within the parameters established by company policy and state imposed billing requirements, and as necessary to achieve reasonable collection goals.**

63.  Plaintiff never received the State required Billing requirements as it pertained to billing and calling Medicaid patients in a Long Term Care Facility and learned later through the Company's Paralegal Aisha Lindsey that the agreements with the States prohibits calling such Residents. id. *(Laduzinski v Alvarez & Marsal Taxand LLC., 16 N.Y.S. 3d 229 (1st Dept 2015).*

64.  In *Aiello v Citizens Securities (FINRA Arbitration 16-00597 (July 13 2017* the panel stated:

> **"Not sure that you want to be defending against allegations of fraudulent inducement by engaging in abusive Discovery practices. That sort of conduct inevitably raises questions in an arbitrator's mind about if you're doing this in response to my orders and in contravention of the rules, I can only imagine what you may have told this former employee in order to get him onboard and maybe you didn't have any compunction about arbitrarily changing his duties or worse."**

65.  Mr. Aiello received $1.7 million in compensatory damages.

66.  Plaintiff restates and re-alleges each and every allegation Paragraphs 1 through 65 above as if fully set forth herein.

## COUNT THREE

### Hostile work environment and Hindrance of her Job

67.  The Supreme Court has determined that a Hostile Work Environment does not have to be solely for acts of discrimination against a protective class but can also be in the form of retaliation against an employee which may include an unhealthy work environment, reduction in wages to cause financial distress, unwarranted discipline or **reported regulatory violations by management.**

68. When Defendant Dyer, a member of upper Management told the Plaintiff it was part of her job to be subjected to nasty calls and violations of Federal and State laws creating a Hostile Work Environment for her which caused her emotional stress and un-comfortability in trying to do her job. *id. (Michael Deguelle v Kristen Camilli Court of Appeals for the Seventh Circuit, Case No. 10-2172)*

69.  Other actions by the Defendants in subjecting her to a Hostile Work environment was cutting off the toll free billing line to her phone, telling her she had to remain at her desk and lastly continuous threats that it was not optional to deny a meeting regarding issues in her complaint ignoring her cease and desist notice which made her decide to leave her job. (Exhibit C)

70. Plaintiff restates and re-alleges each and every allegation Paragraphs 1 through 69 above as if fully set forth herein

## **COUNT FOUR**

### **Violations of the False Claims Act**
### **3729(a)(1)(A) and 3729(b)(1)**

71. **3729(a)(1)(A): Liability for any person who knowingly submits a false claim to the government or *causes another to submit a false claim to the government.***

72. **3729(b)(1): Knowledge of false information (1) actual knowledge, (2) deliberate ignorance of the truth or falsity of the information, or (3) reckless disregard of the truth or falsity of the information**

73. When the Defendant decided to change the billing code for Medicaid patients to Private pay and started sending out statements for over the counter drugs going back to 2019 and as such violated this act because theses drugs had already been paid from the cost reports to Medicaid by the Facilities, as well as the Defendant knew these patients were on Medicaid and ignored this section of the False Claims Act. id. *(United States ex rel. Gharavi v Alixa-RX et al., 1:17-CV-00455-JPB).,(FCA 3729(b)(1),.( FCA 3729(a)(1)(A)).*

74. Plaintiff collected more that $80,000 from these Medicaid patients or their families for OTC's based on what she was told by Defendant Simpson, **a compute glitch.** Medications that had already been paid to the Facility by State Medicaid

75.  In doing so they subjected the Plaintiff to violating a Federal law because it was the Plaintiff that received these calls from the statements that had been sent out and was told the reason was because of a "computer glitch" which was a lie therefore creating a Hostile Work environment as well. id. *(Michael Deguelle v Kristen Camilli Court of Appeals for the Seventh Circuit, Case No. 10-2172)*

76.  Civil Penalties for these violations range between $5000 and $11,000 and based on the calls the Plaintiff received and complaints filed with the HUB, the total amount for such violations would be between **one and three million dollars.**

77.  Plaintiff restates and re-alleges each and every allegation Paragraphs 1 through 76 above as if fully set forth herein.

## COUNT FIVE

### Violations of Mail Fraud 18 U.S.C Chapter 63 1346-1347

78. **18 U.S.C 1346: To scheme or artifice to defraud another of the intangible right of honest services.**

79. **18 U.S.C. 1347(a)(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program.**

80. Because the Defendant sent these statements out by mail for services that had already been paid by a government agency would therefore fall under violations of 18 U.S.C. Chapter 63 1346 and 1347 and as stated previously subjecting the Plaintiff to these violations because she was the receiver of these calls. id.*(Golden G. Higgwe, D.P.M. v The Inspector General, Docket No. C-04-75, Decision No. CR 1229)., (United States ex rel. Gharavi v Alixa-RX et al., 1:17-CV-00455-JPB).*

81. Civil Penalties for mail fraud range from $25,000 to 2 million for each offense.

82. Plaintiff restates and re-alleges each and every allegation Paragraphs 1 through 81 above as if fully set forth herein

## CONCLUSION AND PRAYER

Plaintiff seeks $557,280 in compensatory damages for lose of future wages and $150,000 in punitive damages in using her experience as a Collector and subjecting her to acts of violating the False Claims Act as well as Mail Fraud and Court Costs in the amount of $552.00 and that upon the decision of the Jury the Case be referred to the Office of the Inspector General for further investigation into the facts.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all counts so triable.  Said demand requires a trial by jury concerning whether the parties violated Company Policy in committing acts of Fraud and exposing the Plaintiff to a Hostile Work Environment forcing her to terminate her employment.

Respectfully Submitted                        Date Aug 17, 2021

*Judy D. Brown*

Judy D Brown
Plaintiff

770 Fairway Dr. #1313
Coppell, TX 75019
682-701-9471
jd.brown2017@yahoo.com

Certificate of Service attached

CC:  kristin.higgins@ogletree.com

      jamie.ashton@ogletree.com

**CV-Certificate of Service (Service of Papers Other than Citation)**
**Instructions:** Every notice, pleading, plea, motion, or request made to the court must be served on all other parties in person, by mail or courier, by fax, by e-mail with consent, or in another manner directed by the court. Pleadings and documents other than a citation may be served by a party to the suit, an attorney of record, a sheriff or constable, or any other person competent to testify.
Proof of such service must be evidenced by a certificate of service signed by a party or the party's attorney of record, or signed and verified if the service is made by any other person, and attached to the document filed with the Court. Rule 501.4

## CERTIFICATE OF SERVICE

I certify that this document was served on all parties to this lawsuit as follows:

Name of Document: _Amended Complaint_

Method of Service *(include information for each party to the lawsuit served with the document)*:

☐ Personal Delivery:
    Name of Party or Party's attorney of record or agent, if any: _____
    Address : _____
    Date delivered: _____
    Person delivering document: _____

☐ Mail or Courier:
    Name of Party or Party's attorney of record or agent, if any: _____
    Address : _____
    Date mailed: _____    Certified Mail Receipt No.: _____
    Courier: _____
    Date of courier delivery: _____    Courier Receipt No.: _____

☐ Fax
    Name of Party or Party's attorney of record or agent, if any: _____
    Date and time fax sent: _____    Fax number: _____

☒ Email
    Name of Party or Party's attorney of record or agent, if any: _KRISTEN Higgins  Jamie Ashton_
    Date and time email sent: _____    Email address: _KRISTINhiggins@ogleTREEdeal/ma_
                                                   _Jamie.ASHTON@ogleTRceDeakns iCo_

Signed on _Aug 17 2021_      _Judy D. Brown_
                                      Signature of Party or Party's Attorney of Record

Signed on _____ .      _____
                                        Signature of Person Providing Notice

**(VERIFICATION REQUIRED IF SERVICE IS BY A PERSON OTHER THAN A PARTY OR PARTY'S ATTORNEY)**

I declare under penalty of perjury that the information in this Certificate of Service is true and correct.

Signed on _____ in _____, County, Texas.

                                        Signature of Person Providing Notice
                                        Printed Name: _____
                                        Address: _____
                                          Date of Birth: _____